Leigh **CARNWATH**, et al., Plaintiffs,

v.

**BOARD OF EDUCATION OF ANNE ARUNDEL COUNTY**, et al., Defendants.

No. JFM–97–4100.

United States District Court, D. Maryland.

Aug. 26, 1998.

Matthew B. Bogin, Michael J. Eig, Holly Lynn Parker, Washington, DC, for plaintiffs.

P. Tyson Bennett, Annapolis, MD, Dana Hendricks Murray, Assistant Attorney General, Baltimore, MD, for defendants.

## MEMORANDUM

MOTZ, District Judge.

Plaintiffs, Leigh Carnwath and her parents, Cheryl and John Carnwath ("the Carnwaths"), have brought this action against defendants Carol S. Parham, the superintendent of Anne Arundel County Public Schools, and the Board of Education of Anne Arundel County (together "the County defendants") and the Maryland State Department of Education and its superintendent, Nancy S. Grasmick (together "the State defendants"). Plaintiffs claim that defendants violated the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., the Rehabilitation Act, 42 U.S.C. § 1983 and Maryland law by failing to follow legally mandated procedure and failing to provide Leigh with a free appropriate public education. Plaintiffs seek reimbursement of the tuition and costs they incurred in enrolling Leigh in a private school for the 1997–98 school year, along with other declaratory relief. The defendants have filed motions for summary judgment on two issues: (1) the validity of the notice provision of Md.Educ.Code Ann. § 8–413(i) and its application to plaintiffs, and (2) the adequacy of the State's training programs for Administrative Law Judges ("ALJs"). The plaintiffs have filed a cross-motion for partial summary judgment regarding the § 8–413(i) issue. The defendants' motions will be granted as to the adequacy of the ALJ training but denied as to the § 8–413(i) issue. The plaintiffs' cross-motion for partial summary judgment will be granted.

## I.

Leigh Carnwath is a disabled child. She suffers from a severe language disability that impacts her social and academic abilities. Leigh attended the Broadneck Elementary School ("Broadneck"), a school operated by Anne Arundel County Public Schools, from kindergarten through the fourth grade. During the 1996–97 school year, in which she was a fourth-grader, Leigh's individualized education plan ("IEP") entitled her to receive Intensity IV special education services at Broadneck. The Carnwaths contend that she did not receive sufficient services to meet the year's goals and that she experienced serious problems at school.

Over the course of that school year, several Admission, Review and Dismissal ("ARD") meetings were held to draft an individualized education plan ("IEP") for Leigh for the 1997–98 school year. At the last meeting, after hearing the county's proposed IEP, the Carnwaths informed the IEP team that they "were rejecting the IEP and ... intended to file a request for a due process hearing." The Carnwaths signed the meeting report with the word "Disagree" next to their names. They told the IEP team that Leigh would not return to AACPS schools unless the county improved Leigh's proposed IEP.

Following the meeting, the Carnwaths received a "Procedural Safeguards" document from AACPS. Through their counsel, Michael J. Eig, they submitted a request for due process hearing to the Office of Adminis-

trative Hearings on July 22, 1997. The hearing was scheduled for August 19, 1997. On August 6, 1997, the principal of Broadneck received a telephone request from the Summit School, a private school in Anne Arundel County, for Leigh Carnwath's school records. The staff of Broadneck and the AACPS were not notified in writing of the Carnwath's rejection of the proposed placement, the reasons for the rejection or their intention to enroll Leigh at Summit School.

## II.

■ The ALJ granted the defendants' motion to dismiss on the grounds that the Carnwaths failed to comply with Md.Educ.Code Ann. § 8–413(i) and that the noncompliance barred their recovery of reimbursement for Leigh's private school expenses. However, under both an IDEA provision, 20 U.S.C. § 1415(d)(2)(H), and a COMAR provision, 13A.05.01.13B–13C, the school system is responsible for notifying the parents of the procedures available for obtaining reimbursement for private school tuition.[1] In this case, the school system gave the Carnwaths a "Procedural Safeguards Booklet" (dated July 1996) that had not been updated to reflect the notice requirements of either Maryland law (adopted in October 1996) or the IDEA (adopted in June 1997). The fact that the Procedural Safeguards Booklet indicates that the hearing will be conducted according to the applicable requirements of federal and state law is insufficient to fulfill the school system's duty to notify parents of the proce-

dures available for reimbursement. Defendants contend that even if the notice that was provided was insufficient, the Carnwaths had actual notice of the requirements because their counsel, Bogin and Eig, P.C., knew of them, as evidenced by their simultaneous representation of clients in another case. While this contention has some surface appeal, it ultimately would be unfair to rule that the school system did not have to fulfill its duty to give notice to the Carnwaths about the state and federal notice requirements, but to dismiss the Carnwaths' case solely on the grounds that they failed to give formal written notice of their intentions to the school system. As a result, I find that the notice provisions of § 8–413(i) and the IDEA did not apply to the Carnwaths, and I reverse the decision of the ALJ granting defendants' motion to dismiss on those grounds.[2]

## III.

■ Because I am reversing the ALJ's decision on the motion to dismiss, the logical next step is to remand the case for an administrative hearing on the merits of the Carnwaths' IDEA claim. The ALJ incorrectly dismissed the claim on the basis of a procedural violation, and the merits of the claim have not yet been considered in the administrative process. This Court's limited IDEA jurisdiction permits review of factual findings and legal determinations by an ALJ, but does not generally permit consideration of the substantive merits of IDEA claims in the

1. The duty to provide notice to the parents belonged solely to the Anne Arundel County school system and not to the State defendants. While I am remanding the case to the administrative process because the school system failed to fulfill its duty, I do not find that its failure amounted to a denial of FAPE. I am therefore not ruling on the substantive merits of the Carnwaths' IDEA claim at this time. As a result, both the state and the local defendants remain in the case for the Administrative Law Judge to determine whether the Carnwaths' rights have been violated and, if so, how the responsibility should be apportioned between the defendants.

2. Plaintiffs also argue that the § 8–413(i) notice provision is preempted. Although I need not decide that issue here, it seems rather clear that § 8–413(i) nullifies the provision of the IDEA allowing parents to give oral notice at an IEP

meeting of their intention to place the child into public school. Further, § 8–413(i) does not expressly incorporate the four exceptions in the IDEA under which reimbursement cannot be reduced or denied for parents' failure to provide notice.

In their reply memorandum, the Carnwaths note that the State may be considering revision of its regulations to mirror the IDEA notice provisions. While the State's requirement of written parental notice may, as a policy matter, be sound because it provides for a clearer record of parents' intent, and while such a requirement may be particularly advisable in light of the myriad tuition reimbursement actions that have been brought in recent years, in light of the potential preemption problems the State would be well-advised to consider amending § 8–413(i) to comport with the IDEA.

first instance. Because the substantive merits have not yet been adjudicated in the administrative process and because I do not find that equitable considerations in this case require any extraordinary action, the Carnwaths' contention that they have exhausted their administrative remedies is incorrect. However, because I have determined that the case should be remanded to the administrative system, logically I must consider the merits of the Carnwaths' claim regarding the adequacy of the training of the ALJs.

 The IDEA and applicable state statutes provide very limited guidance as to the type of training required for ALJs. The IDEA merely dictates that the hearing officer must be impartial and must not be an employee of a public agency involved in the education or care of the child. No training requirements are imposed by the federal law. As a result, the training system implemented in Maryland clearly comports with the IDEA's general guarantee of an impartial due process hearing.

 The crux of the Carnwaths' argument is that Maryland's current system for training ALJs violates the state law requirement that the hearings be conducted by an ALJ who "has received and continues to receive specialized training in matters significant to the educational review of students with disabilities." Md.Educ.Code Ann. § 8–413(c)(2)(ii). I do not have jurisdiction to reach that issue because a "claim that State officials violated State law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Carnwaths' argument that the state law training requirements have been incorporated into the IDEA is unpersuasive. While the

Fourth Circuit's unpublished opinion in *Aiello v. Grasmick,* 1998 WL 394175 (4th Cir. June 9, 1998), is not binding precedent, I find its reasoning to be sound. The IDEA explicitly incorporates state educational standards, *see* 20 U.S.C. § 1401(18)(B), but does not explicitly incorporate state hearing officer training provisions. In fact, as noted above, the IDEA does not even mention the training of hearing officers. Therefore, there is no support for the Carnwaths' incorporation claim, and their claim about the training requirements is purely one of state law that is barred by the Eleventh Amendment.[3]

For these reasons, defendants' motions for summary judgment are granted as to the adequacy of the training of ALJs and denied as to the applicability of the notice requirements of § 8–413(i) and the IDEA to this case. Plaintiffs' cross-motion for partial summary judgment is granted, and the action is remanded for further proceedings at the administrative level.

---

**3.** I note, however, that in light of the reasonable training program existing in Maryland, the scant guidance provided by the state law as to the type of training required, and the legislative history indicating that the state legislature did not intend to dictate the substantive content of the required training, I do not believe it can be said that the State Board of Education's construction of the statutory requirements for training is "contrary to the clear and unambiguous meaning of the statute." *State Farm v. Maryland Automobile*

*Ins. Fund,* 277 Md. 602, 606, 356 A.2d 560 (1976). Nevertheless, in order to avoid unnecessary controversy, the State may want to keep records to ensure that an ALJ with no special education background could not attend only a very general full day training session, such as "Decision Writing (General Training)," and be deemed qualified to hear IDEA cases. However, there is no evidence that any ALJ has done so or that the State would in fact consider that ALJ qualified to hear IDEA cases.